<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SUSANA E. MEJIA DE GOICO,<br><br>               Plaintiff,<br><br>          v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICE,<br><br>               Defendant. | Case No. 2:23-cv-00812 (BRM) (CLW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

      Before the Court are two motions. The first motion is Defendant United States Citizenship and Immigration Service's ("USCIS") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 28.) Plaintiff Susana E. Mejia De Goico ("Plaintiff") filed an opposition on January 8, 2024. (ECF No. 29.) The USCIS filed a reply on January 16, 2024. (ECF No. 31.) The second motion is Plaintiff's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 29[1].) The USCIS filed an opposition on January 16, 2024. (ECF No. 31[2].) Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, the USCIS's Motion for Summary Judgment is **GRANTED** and Plaintiff's cross Motion for Summary Judgment is **DENIED**.

---

[1] ECF No. 29 served as both Plaintiff's opposition to the USCIS's Motion for Summary Judgment, and Plaintiff's support papers for her own Motion for Summary Judgment. (ECF No. 29 at 1.)

[2] ECF No. 31 served as both the USCIS's reply papers for its own Motion for Summary Judgment, and its opposition to Plaintiff's Motion for Summary Judgment. (ECF No. 31 at 1.)

I. **BACKGROUND**

A. **Factual Background**

The parties do not dispute the material facts in this case. (ECF No. 29-2 at 1–3; ECF No. 31-1.) The case arises from the USCIS's denial of Plaintiff's naturalization application for failure to maintain continuous residency under the Immigration and Nationality Act ("INA") due to an absence of 397 days from the country during the pendency of her application. (ECF No. 28-1 at 1; ECF No. 29 at 1.) Plaintiff is a citizen of Venezuela who became a lawful permanent resident of the United States on September 13, 1994. (ECF No. 28-2 at 1; ECF No. 29-2 at 1.) Plaintiff submitted an N-400 Application for Naturalization in September 2019. (ECF No. 28-2 at 2; ECF No. 29-2 at 1.)

Plaintiff purchased a roundtrip ticket departing from Newark to the Dominican Republic on November 20, 2019, intending to return to the United States on March 31, 2020. (ECF No. 29-2 at 3; ECF No. 31-1 at 1.) In December 2019, Plaintiff travelled from the Dominican Republic to Venezuela, intending to return to the Dominican Republic by March 31, 2020 to board a return flight to the United States. (ECF No. 29-2 at 4; ECF No. 31-1 at 2.) Plaintiff was in Venezuela on March 12, 2020, when the Venezuelan government closed the nation's airports in response to the COVID-19 pandemic. (ECF No. 29-2 at 4; ECF No. 31-1 at 2.) Ultimately, although there remained no direct commercial flights from Venezuela to the United States, Plaintiff secured a flight from Venezuela to Mexico and returned to the United States from Mexico on December 22, 2020. (ECF No. 29-2 at 4; ECF No. 31-1 at 3.)

Plaintiff's USCIS interview in connection with the N-400 application was initially scheduled for October 7, 2020, but was rescheduled for March 23, 2022 as Plaintiff indicated she would not be in the country to attend the October 7, 2020 interview. (ECF No. 28-2 at 2; ECF No.

29-2 at 1.) At the March 23, 2022 interview, Plaintiff indicated she had been outside the United States for a total of 397 days between November 20, 2019 and December 22, 2020. (ECF No. 28-2 at 2; ECF No. 29-2 at 2.) On April 14, 2022, the USCIS denied Plaintiff's N-400 application for the stated reason that she had failed to maintain continuous residency in the United States during the pendency of her naturalization application. (ECF No. 28-2 at 2; ECF No. 29-2 at 2.)

On July 11, 2022, Plaintiff submitted Form N-336 requesting a hearing for a decision on naturalization and a declaration that she had involuntarily been outside the United States for 397 days due to COVID-19 travel restrictions. (ECF No. 28-2 at 2–3; ECF No. 29-2 at 2.) On November 16, 2022, Plaintiff appeared at a hearing on her application. (ECF No. 28-2 at 3; ECF No. 29-2 at 2.) On November 21, 2022, the USCIS reaffirmed its decision to deny Plaintiff's Form N-400 application for the stated reason that she had failed to maintain continuous residency in the United States during the pendency of her naturalization application. (ECF No. 28-10 at 2; ECF No. 28-2 at 3.) Specifically, the USCIS stated that although "there were COVID-19 related travel restrictions which impacted individuals['] ability to return to the United States," "the only way [Plaintiff's] specific absence could be excused" was if the USCIS "had an approved Form N-470, Application to preserve Residence for Naturalization Purposes (N-470) on record." (ECF No. 28-10 at 2–3, ECF No. 28-2 at 3; ECF No. 29-2 at 2–3.) Plaintiff did not submit a Form N-470 as part of her naturalization application. (ECF No. 28-2 at 3–4; ECF No. 29-2 at 2–3.) The N-336 decision constitutes the final administrative review of Plaintiff's naturalization application. (ECF No. 28-10 at 3, ECF No. 28-2 at 4; ECF No. 29-2 at 3.)

**B.      Procedural History**

Plaintiff filed her Complaint on February 10, 2023, asking the Court to reverse the USCIS's denial of her "N-400" request. (ECF No. 1.) The USCIS answered the Complaint on May 22, 2023.

(ECF No. 12.) The USCIS filed a Motion for Summary Judgment on December 7, 2023. (ECF No. 28.) Plaintiff filed an Opposition and a cross Motion for Summary Judgment on January 8, 2024. (ECF No. 29.) The USCIS filed an opposition to Plaintiff's cross Motion for Summary Judgment, and a reply to Plaintiff's opposition to the USCIS's Motion for Summary Judgment, on January 16, 2024. (ECF No. 31.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A party asserting a genuine dispute of material fact must support the assertion by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A factual dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) (citations omitted). Irrelevant or unnecessary factual disputes will also not preclude

a grant of summary judgment. *See Anderson*, 477 U.S. at 248. Moreover, "mere speculation does not create genuine issues of material fact." *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 215–16 (3d Cir. 2011) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant adequately supports its summary judgment motion, the burden shifts to the nonmovant to "go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in [their] favor.'" *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255). In other words, in deciding a party's summary judgment motion, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255. "Summary judgment is appropriate only when there are no genuine issues of material fact, drawing all justifiable inferences in favor of the nonmovant." *Adams v. Fayette Home Care & Hospice*, 452 F. App'x 137, 139 (3d Cir. 2011) (citing *Anderson,* 477 U.S. at 248, 255).

If the moving party bears the burden of persuasion at trial, summary judgment is not appropriate if the evidence is susceptible to different interpretations or inferences by the trier of

5

fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999); *see also id.* at 553 n.9 (noting "summary judgment is rarely granted in a plaintiff's favor in cases where the issue is a defendant's racial motivation, such as disparate treatment suits under Title VII or racial discrimination claims under 42 U.S.C. § 1981"). On the other hand, if the non-moving party bears the burden of proof at trial, "summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (alteration in original) (quoting *Celotex*, 477 U.S. at 322). A "genuine issue as to any material fact" cannot exist if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

### III. DECISION

The USCIS filed a Motion for Summary Judgment. (ECF No. 28.) Plaintiff filed a Cross-Motion for Summary Judgment. (ECF No. 29.) The Court addresses the USCIS's Motion for Summary Judgment first. As the Court finds summary judgment is warranted for the USCIS, it does not reach Plaintiff's Cross-Motion for Summary Judgment.

The USCIS argues the Court should affirm the USCIS's denial of Plaintiff's naturalization application, and grant summary judgment for the USCIS, as Plaintiff has failed to meet her burden of proving, by a preponderance of evidence, that she meets all statutory requirements for becoming a United States citizen. (ECF No. 28-1 at 6–7.) The USCIS notes that the INA states "[a]bsences

6

from the United States for a continuous period of more than one year during the period for which continuous residency is required for admission to citizenship (whether preceding or subsequent to the filing of the application for naturalization) shall break the continuity of such residency." (*Id.* at 8 (quoting 8 U.S.C. § 1427(b)).) To the extent Plaintiff requests the Court equitably toll her absence due to the unforeseen COVID-19 travel bans, the USCIS argues the Court has no powers to equitably grant citizenship to an applicant and precedent has generally held that courts will not excuse absences from the United States for circumstances beyond an applicant's control. (ECF No. 28-1 at 9–10.) The USCIS claims there are no hardship or discretionary exceptions to the continuous residency requirement of the INA. (*Id.* at 10–11.) Therefore, because strict compliance is required with the INA's naturalization provisions, the Court should affirm the USCIS's decision and grant summary judgment to the agency. (*Id.* at 11–12.)

Plaintiff argues valid precedent in the Third Circuit permits a court to make equitable exceptions to the continuous residency requirement where such residency was interrupted due to circumstances outside the naturalization applicant's control. (ECF No. 29 at 6–15.) Plaintiff claims that the Court has flexibility to interpret the INA's purpose, and deviation from the strict requirements of the statute is appropriate where unanticipated external forces thwart the naturalization applicant's good faith attempts at compliance. (*Id.* at 8.) Plaintiff asserts that courts have previously found equitable exceptions to the continuous residency requirement for those absent from the country as prisoners of war and spouses who could not join their enlisted partner serving in an active conflict zone. (*Id.*) Plaintiff posits that courts may find exceptions to the continuous residency requirement where the applicant's absence does not indicate an intent to avoid the policy objectives of the requirement, including attachment to the principles of the country and integration into the national culture. (*Id.* at 10–12.) Plaintiff argues the COVID-19 pandemic

7

was a similar event to the military conflicts which led to prior equitable exceptions to the continuous residency requirement, as it was a global event of historic importance which led to unforeseen and severe circumstances. (*Id.* at 13–14.) Plaintiff finally argues that she is harmed by the denial of her present naturalization application because, even though she can refile her naturalization application, any refiling would be time-consuming. (*Id.* at 14–15.)

The USCIS replies that the granting of a naturalization application under the INA requires "strict compliance" with the statutory provisions, given the high privilege of citizenship. (ECF No. 31 at 2–4.) The USCIS argues the central case in Plaintiff's briefing, *In re Lavoie*, 349 F. Supp. 68 (D.V.I. 1972), granted an equitable exception to the continuous residency requirement only because of the misleading statements of immigration officials to the applicant. (*Id.* at 4–5.) The USCIS also notes the *Lavoie* case was decided before the Supreme Court decision in *I.N.S. v. Pangilinan*, 486 U.S. 875, 884 (1988), which it claims held that courts may not ignore defects in naturalization applications to grant citizenship on an equitable basis. (*Id.* at 5–6.) The USCIS also highlights the different standard for deportation and naturalization proceedings, given the high privilege which naturalization represents, and argues that cases making equitable exceptions to deportations are irrelevant in the naturalization context. (*Id.* at 6–7.)

Citizenship is a "high privilege," *Shtykova v. Holder*, Civ. A. No. 10-4999, 2012 WL 1004906, at *3 (E.D.N.Y. Mar. 22, 2012) (quoting *United States v. Schwimmer*, 279 U.S. 644, 649–50 (1929)), which should only be granted when the naturalization applicant is in "strict compliance" with the requirements of the INA. *Fedorenko v. United States*, 449 U.S. 490, 491 (1981); *see also United States v. Szehinskyj*, 277 F.3d 331, 334 (3d Cir. 2002); *Al-Hasani v. Sec'y United States Dep't of Homeland Sec.*, 81 F.4th 291, 295 (3d Cir. 2023). The United States Constitution grants to Congress, at Article I, § 8, cl. 4, the power to "[t]o establish a[] uniform

8

Rule of Naturalization." U.S. CONST. art. I., § 8, cl. 4. Therefore, "the power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers." *I.N.S. v. Pangilinan*, 486 U.S. 875, 883–84 (1988); *see also Ekubov v. United States Dep't of Homeland Sec.*, Civ. A. No. 20-1104, 2022 WL 2490733, at *8 (W.D. Wash. June 7, 2022) (same); *Koszelnik v. Sec'y United States Dep't of Homeland Sec.*, 828 F.3d 175, 182 (3d Cir. 2016) ("Only applicants who demonstrate strict compliance with all of the statutory requirements for citizenship may be naturalized . . . . 'Once it has been determined that a person does not qualify for citizenship, the [] court has no discretion to ignore the defect and grant citizenship.'" (quoting *Pangilinan*, 486 U.S. at 884)). Therefore, it is clear that this Court must enforce the enumerated terms of the INA.

The INA does not make any discretionary or hardship-based exceptions to the continuous residency requirement, and the Court will not read in such exceptions to the statute because of the *expression unius* canon. The INA, at 8 U.S.C. § 1427(b), details the continuous residency rule and enumerates certain exceptions to the rule, these being applicable to a person who is:

> employed by or under contract with the Government of the United States or an American institution of research recognized as such by the Attorney General, or is employed by an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States, or a subsidiary thereof more than 50 per centum of whose stock is owned by an American firm or corporation, or is employed by a public international organization of which the United States is a member by treaty or statute.

Because the statute enumerates the exceptions to the continuous residency requirement, the Court finds Congress clearly expressed all the exceptions it intended, and the Court will not read further exceptions into the statute due to the canon of *expressio unius*, which posits that the listing of the enumerated exceptions implies the exclusion of other exceptions. *See Ray v. Kertes*, 285 F.3d 287, 296 (3d Cir. 2002) ("Availing here is an application of the principle of *expressio unius est exclusio*

*alterius*—when a statute specifically enumerates some categories, it impliedly excludes others."); *United States v. Info. Associated with Email Acct.*, 449 F. Supp. 3d 469, 474 (E.D. Pa. 2020) (Holding that where a statute did not express a standard or mechanism for the review "the interpretive canon *expressio unius est exclusio alterius*, i.e. that 'expressing one item of [an] associated group or series excludes another left unmentioned,' provides useful guidance." (quoting *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017))); *United States v. Nasir*, 17 F.4th 459, 471–72 (3d Cir. 2021) ("As a familiar canon of construction states, *expressio unius est exclusio alterius*: the expression of one thing is the exclusion of the other.").

Here, the application of *expressio unius* is appropriate as it is clear that Congress considered, and made provision for, equitable exceptions in the statute. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) (Noting that "[w]e have long held that the *expressio unius* canon does not apply 'unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it'" (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003))); *N.L.R.B.*, 580 U.S. at 302 ("The *expressio unius* canon applies only when 'circumstances support [] a sensible inference that the term left out must have been meant to be excluded.'" (quoting *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002))); *Travers v. Fed. Express Corp.*, 8 F.4th 198, 206 n.19 (3d Cir. 2021) ("The negative-implication canon requires particularly careful application and 'applies only when circumstances support a sensible inference that the term left out must have been meant to be excluded.'" (quoting *N.L.R.B.*, 580 U.S. at 302)). The Court therefore finds the enumerated exceptions constitute the entirety of the exceptions Congress intended to include, particularly because no provision was made for discretionary exceptions based on an applicant's hardship or inability to return to the country. Where Congress provides enumerated exceptions in a statute, courts do not have the authority to create others. *See United*

*States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference, and the one we adopt here, is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth."); *Ingram v. Experian Info. Sols., Inc.*, 83 F.4th 231, 241 (3d Cir. 2023) (same) (quoting *Johnson*, 529 U.S. at 58); *Aristy-Rosa v. Att'y Gen. United States*, 994 F.3d 112, 115–16 (3d Cir. 2021) (same) (quoting *Johnson*, 529 U.S. at 58).

To the extent Plaintiff argues the Court may intervene to create an implied equitable exception to the continuous residency requirement where unexpected global events thwart the applicant's efforts to maintain continuous residency, this argument is based on outdated caselaw decided before the Supreme Court clarified the limited role of the Court in interpreting the INA. There is no dispute the enumerated exceptions do not apply to Plaintiff, who instead asks for equitable relief due to the COVID-19 pandemic preventing her return to the United States. (ECF No. 29 at 2.) Plaintiff cites the *Lavoie* case as an example where a court created an equitable exception to the continuous residency requirement based on a "flexible" view of congressional purpose which "permitted deviation from the residency requirements where external forces . . . rendered fruitless the petitioners' good-faith attempts at compliance." *Lavoie*, 349 F. Supp. at 71. Plaintiff also cites to cases which found equitable exceptions to the continuous residency requirement for those absent from the country as prisoners of war and spouses who could not join their enlisted partner serving in an active conflict zone. (ECF No. 29 at 8.) These cases were all decided before the Supreme Court clarified in *Fedorenko* that citizenship may only be granted to applicants in "strict compliance" with the terms of the INA. *Fedorenko*, 449 U.S. at 491; *see also Szehinskyj*, 277 F.3d at 334; *Al-Hasani*, 81 F.4th at 295; *Koszelnik*, 828 F.3d at 182 ("Only applicants who demonstrate strict compliance with all of the statutory requirements for citizenship

11

may be naturalized . . . . 'Once it has been determined that a person does not qualify for citizenship, the [] court has no discretion to ignore the defect and grant citizenship.'" (quoting *Pangilinan*, 486 U.S. at 884)). The current, binding precedent from the caselaw indicates that the congressional purpose in the INA bears no "flexible" interpretation when applied to naturalization. At least one court has correspondingly held that this strict interpretation of the INA's naturalization requirements precludes relief for a naturalization applicant bringing a claim on the same grounds as Plaintiff here. *See Ibrahim v. United States Dep't of Homeland Sec.*, Civ. A. No. 22-1080, 2024 WL 197265, at *1–2 (N.D. Oh. Jan. 18, 2024) (dismissing plaintiff's application to overturn USCIS's denial of his naturalization application for being absent from the United States for more than one year because, although Plaintiff argued the length of his absence was involuntary due to COVID-19 travel restrictions, "Courts considering circumstances substantially similar to those present in this case consistently 'have held that a voluntary departure from the United States, followed by an involuntary absence of more than one year, precludes naturalization.'" (quoting *In re Naturalization of Vafaei-Makhsoos*, 597 F. Supp. 499, 500 (D. Minn. 1984))).

Although the Court is sympathetic to Plaintiff's unusual circumstances and the disruption caused by the COVID-19 pandemic, the Court must remain mindful that the Constitution assigns the power to grant citizenship to Congress, U.S. CONST. art. I., § 8, cl. 4, meaning that it is ultimately for Congress to amend the INA should it wish to add further exceptions to the continuous residency requirement. *See Pangilinan*, 486 U.S. at 883–84; *see also Ekubov*, 2022 WL 2490733, at *8. The Court cannot read new exceptions into a statute which has already clearly enumerated its exceptions. *See Johnson*, 529 U.S. at 58; *Ingram*, 83 F.4th at 241 (quoting *Johnson*, 529 U.S. at 58); *Aristy-Rosa*, 994 F.3d at 115–16 (quoting *Johnson*, 529 U.S. at 58).

Accordingly, the Court finds summary judgment as a matter of law is warranted in favor of the USCIS.

### IV. CONCLUSION

For the reasons set forth, the USCIS's Motion for Summary Judgment (ECF No. 28) is **GRANTED**, and Plaintiff's Cross-Motion for Summary Judgment is **DENIED**. An appropriate Order follows.

Date: June 20, 2024                                       */s/ Brian R. Martinotti*
                                                                                    **HON. BRIAN R. MARTINOTTI**
                                                                                    **UNITED STATES DISTRICT JUDGE**